affirmed. The case is remanded for trial. Jurisdiction is not retained.

IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL OF GLADYS E. MARINUS, A/K/A GLADYS E. NADEAU, DECEASED.

Superior Court of New Jersey
Appellate Division

Submitted April 16, 1985—Decided May 9, 1985.

330

Before Judges MICHELS, PETRELLA and BAIME.

*Summerill & Hull, P.A.*, attorneys for appellant Rene W. Nadeau, Jr. (*Douglas J. Hull*, on the brief).

A joint brief was filed by:

*Davies, Davies, Sandberg & Fox, P.A.*, attorneys for respondents Madison Avenue Baptist Church, North Shore Animal League, and Cathedral of Tomorrow (*Earle C. Sandberg*, on the brief); and

*Gilmore & Monahan, P.A.*, attorneys for Louise Gunther, Elsie and Henry Gideon, Molly Egg and Mabel Perkins (*Russell P. Cherkos*, on the brief).

The opinion of the court was delivered by

PETRELLA, J.A.D.

Rene W. Nadeau, Jr. appeals from a determination of the Probate Part of Superior Court, Ocean County, holding that he was not entitled to take his deceased wife's estate as an omitted spouse under *N.J.S.A.* 3B:5-15, but was only entitled to take an elective share under *N.J.S.A.* 3B:8-1, *et seq.*, because certain documents authored by decedent subsequent to her marriage to Nadeau republished decedent's will which had been executed prior to their becoming husband and wife.

For the reasons hereinafter stated we are satisfied that the holographic documents admitted to probate are ineffective as a matter of law to republish decedent's 1979 will. We conclude that the judge erred in admitting the three documents as codicils because they do not refer back to that will, and do not indicate any intent to republish it.

In order to understand the positions of the parties it is necessary to review the relevant factual setting. On August

25, 1979 [1] Gladys E. Marinus had executed what became her Last Will and Testament. In that will she appointed the First National Bank of Toms River to be executor and trustee. Among other things, monetary bequests were made therein to certain individuals, some of whom are respondents herein: Nellie Brain ($5,000); [2] Mollie Pernot Egg ($5,000); Mabel Stone Perkins ($5,000); Kenneth and Louise Gunther ($15,000 and any grave sites in Cedar Lawn Cemetery, Paterson); Henry and Elsie Gideon (her home and the contents). The residue of her estate was to be held in trust, with the income therefrom to be paid to Kenneth and Louise Gunther or the survivor, during their lifetime. Upon the death of the survivor, the trust residue was to be distributed equally among the Cathedral of Tomorrow, also known as the Rev. Humbard Foundation, in Cayuga Falls, Ohio; The Hour of Power, in California; The Madison Avenue Baptist Church of the City of Paterson ("Madison Church"), and the North Shore Animal League of Long Island, New York (hereinafter collectively the "charitable beneficiaries").

Nadeau and Gladys E. Marinus met in April 1980. They were married on August 30, 1982 in a civil ceremony in Elkton, Maryland. The marriage certificate indicated that at the time of their marriage Nadeau was 21 years old and his bride, previously married to Vernon Marinus who died in 1965, was 75.

Although discovery had apparently never been completed in this matter, the depositions of Nadeau stated that on or about February 16 or 17, 1983 he had made an appointment on behalf of himself and his wife with an attorney to have wills made on February 22, 1983, the same day that Gladys was to see her

---

[1] Apparently she had executed other wills in the past, each drafted by a lawyer.

[2] The will gave $5,000 to Rev. Leonard Brain and Mrs. Nellie Brain, or the survivor. The Rev. Brain apparently predeceased the testatrix, in 1982.

doctor. Gladys died on February 19, 1983. It is undisputed that decedent had made certain changes on a photocopy of her August 25, 1979 will in her own handwriting, although she did not sign anew any place except on a will backer kept with those pages.[3] Moreover, the changes indicated could not be understood without referring to the copies of the pages of the will. Those changes essentially indicated that her entire estate was to be given to Nadeau. The original 1979 will had apparently been retained by the attorney who drew the document.

Nadeau's attorney represented to the probate judge that decedent had kept folded together in an envelope[4] in a metal box not only the marked-up photocopy of her 1979 will, but also three other documents which are conceded by the parties to have been written in decedent's own handwriting. The first of the three documents bears both 1979 and 1983 dates and was written in green ink, with changes apparently made subsequently in blue ink. Across the top of the first document in green ink is the signature "Gladys Evelyn Marinus" above a line which reads *"Instructions for my burial"* (emphasis in original) along with the date "Dec 17, 1979":[5]

Pay all just debts—bury me in Grave No. 12 in Cedar Lawn Cemetery, Paterson, N.J. *with headstone, as soon as feasible.* If Louise Gunther is still living—she will arrange *hair—dress—*flowers in hand in casket. *Wig No VII in closet* She is to have her choice of any jewelry of any kind left by me real or imitation, *or clothes, including coats.* There are two life insurance policies in

---

[3]This will backer was possibly from the original of an earlier, but revoked will because although undated, the name of an attorney was imprinted thereon who was different than the scrivener of the 1979 will.

[4]It has been held that where a will was in the testatrix' own handwriting and consisted of several sheets of paper, no particular method of fastening was required and it was sufficient if it satisfactorily appeared that the several sheets offered for probate were collectively executed, published and intended as a single will. *In re Potts' Estate,* 61 A.2d 649 (Cty.Ct.1948).

[5]The document continues in green ink, with insertions in blue ink as shown in underscoring in the quotation, except for the words "hair," "dress" and "books" which are underlined in green ink.

among my papers in tin boxes in bedroom closet on floor.  Also are Savings & Loan account *books,* telling the amount of each.  Also Cemetery deeds.

*Signed,*

### Gladys E. Marinus
### Jan. 25, 1983

The Arabic numeral "12" in the body of the writing is enclosed in a red square.  On the obverse of this sheet is written in green ink: "Instructions for Burial."

The second document, written entirely in blue ink (except for the enclosure of the numeral "12" in red ink), and conceded to be in decedent's handwriting, reads:

Jan. 25–1983

Instructions for burial, etc for Gladys E. Marinus

Deed for cemetery plot located at Cedar Lawn Cemetery in Paterson, N.J., in gray metal box in closet.  Also deed for 137 Westbrook Drive, Toms River, N.J. Bury me in grave No.⎡12⎤ , between Margaret J. Ward and Vernon Marinus

Grave No 12-Section 17-Lot 332.  List of all money owned by me as indicated in books—also in gray box in closet.  Notify Ridgewood, N.J. News and Paterson N.J. News for death notice. *Do not give age.*

Funeral may be held at chapel, located at Cedar Lawn Cemetery in Paterson, N.J., *if more convenient.  Buy plenty of flowers.*

Two insurance policies from Prudential Insurance Co.

Pol. No. M7801448          Signed,

Pol. No. 24 931 522                 Gladys E. Marinus

Jan. 25, 1983

The third writing by decedent is undated and appears on one side of a will backer sheet which had been attached to the remaining pages of the photocopy of her 1979 will.  A small piece of paper was taped on the backer below the printed and typed words "Last Will and Testament of Gladys E. Marinus" with decedent's handwritten note: "Instructions inside for burial and other details relating to my death."  Underneath that sentence was the signature of Gladys E. Marinus.  On the opposite side of the backer sheet decedent wrote (all emphasis in original):

Instructions for burial, etc.

Deed for cemetery plot located at Cedar Lawn in Paterson N.J. in ~~green~~ gray metal box in small bedroom closet. Also deed for 137 Westbrook Dr. house, etc. in ~~green~~ gray box

Bury me in grave between Margaret J. Ward and Vernon Marinus. Grave #⌐12⌐ Section 17-Lot 332- (Put marker on my grave same as Vernon Marinus as soon as possible)

List of all money owned by me as indicated on enclosed list. Books for same in above mentioned green or gray metal box

Notify Ridgewood N.J. News, and Paterson N.J. News for death notices and obituaries *Do not give age!*

Funeral can be held at chapel, located at Cedar Lawn Cemetery, in Paterson, N.J. *if more convenient. Buy plenty of flowers*

~~Have Rev. Leonard Brain for minister—if not deceased.~~ *Deceased*

Ask Louise Gunther to arrange my appearance in casket

~~Old Ridge Road~~

~~Bloomingdale, N.J. 07403~~

~~Phone: 838-8339~~

------------------------

Two insurance policies from Prudential Ins. Co.
Pol. No. M7801448
Pol. No. 24 931 522

Signed,
Gladys E. Nadeau

Although undated, this was presumably written after her marriage based on her use of the name Nadeau. Nadeau's attorney represented to the judge that testimony could be produced concerning when the markings on the photocopy of the 1979 will were made and by whom. He also indicated that during depositions Nadeau had testified that decedent made the changes on her will on or about January 25 or 26, 1983. In his depositions he had apparently said that the marked-up will had been created some time after the burial instructions.

The photocopy of the August 25, 1979 will had certain provisions stricken out and other words written thereon in what was conceded to be decedent's handwriting. That copy of Gladys' will, which Nadeau had in the alternative sought to have admitted to probate, had no new signature on the copies of the will pages themselves, although as previously noted decedent's

signature appeared on an attached backer sheet. The copy of the will had changes thereon deleting the provisions for the Rev. and Mrs. Brain, for Mollie Egg and Mabel Perkins. The $15,000 bequest to Louise and Kenneth Gunther had been changed to $25,000 to Louise Gunther alone. Decedent's gift of any grave sites that she owned in Cedar Lawn Cemetery at her death was changed from the Gunthers to her husband, and paragraph seven and eight of the will which made a gift of her home and its contents and the residue of her estate were changed to give them to her husband. It appears that the provisions for the charitable beneficiaries were crossed out.

After decedent's death her husband filed a complaint in the Probate Part of Superior Court seeking to be declared an "omitted spouse," see *N.J.S.A.* 3B:5–15, because he had not been provided for in the will decedent had executed prior to the 1982 marriage or by other transfers during their marriage. Various individual beneficiaries filed answers disputing Nadeau's claim. They sought to establish their own claims to bequests under the will. The charitable beneficiaries disputed plaintiff's assertion that Gladys had not intended to omit him from her will. Subsequently, Madison Church filed a separate complaint [6] in the Probate Part seeking discovery of codicils and for the probate of those codicils in solemn form. Madison Church alleged that the individual respondents had shown the charitable beneficiaries two writings bearing the date of January 25, 1983, and signed by Gladys, which it believed were holographic codicils to Gladys' will. Because these documents were in the possession of certain of the individual respondents, it was unable to offer them for probate.

The individual respondents answered stating that the writings were in Elsie Gideon's possession and that the respondents also believed that they constituted holographic codicils, and

---

[6]Apparently the judge below treated that complaint as part of the pending matter. The same docket number was assigned to both matters.

they sought a judgment admitting those writings to probate. Louise Gunther agreed to produce the originals for probate. Although Nadeau did not dispute the signature on the two writings or that the writing was that of the decedent, he challenged the dates of the writings and whether they qualified as holographic codicils. In separate defenses he asserted that the writings did not purport to be codicils, were not testamentary in nature and were not intended or qualified for probate.

When the parties appeared before the probate judge he limited the issue to whether he should admit to probate the first two writings as codicils and declined to rule then on the effect of admission. It was stated that respondents had gotten possession of the writings from Nadeau. It was stipulated that the handwriting on the papers was decedent's and without conceding them to be testamentary, or codicils, that she had the capacity to make a testamentary disposition. Based solely on oral argument and the filed papers the judge determined to admit the two writings to probate without a hearing and without determining the effect of the admission of those documents. He reserved decision on the legal effect of the codicils upon the distribution of the estate.

Nadeau then amended his complaint to add a second count asserting that in the alternative he was entitled to an elective share of the estate pursuant to *N.J.S.A.* 3B:8–1, *et seq.* In a third count he sought to have admitted to probate the photocopy of Gladys' August 25, 1979 will upon which notations had been made, as well as the copy of the will backer with the writing thereon (quoted above). The individual respondents and the charitable beneficiaries, objected to the admission of the marked up copy of the will. However, they consented to the admission into probate of the will backer (the third document).

The judge below presumably had available the pleadings and moving papers on each of the occasions wherein the parties appeared with respect to the proffers of the writings as holo-

graphic codicils. He ultimately admitted into probate the document dated 1979 and 1983 and written in green ink with blue insertions, the second of the documents, dated 1983, and written in blue ink, and the backer attached to the photocopy of the 1979 will. The photocopy of the 1979 will was not admitted. He made no findings of fact and stated no conclusions of law. On November 7, 1983 the judge issued a letter opinion in which he stated he was satisfied that the three documents admitted to probate [7] were testamentary codicils which had the effect of republishing and re-executing decedent's 1979 will (made before the marriage) "some five months after the marriage." He therefore held that Nadeau was entitled to an elective share of Gladys' estate, but not to the estate as an omitted spouse.

Nadeau filed a motion for a rehearing or for a hearing as to the form of the order in which he also requested that the judge make findings of fact and conclusions of law. The judge agreed to give written reasons if anyone appealed. He alluded to the press of business making it his general practice not to make findings except where an appeal was filed. We expressly disapprove of such a practice of declining to make findings of fact and conclusions of law only if and when an appeal is filed. The necessity to remind trial judges of their obligation to make findings of fact and conclusions of law arises far too frequently. Our case law is abundant with such reminders. *E.g., State v. Singletary*, 165 *N.J.Super.* 421, 424–425 (App.Div.1979), certif. den. 81 *N.J.* 50 (1979), on remand, 170 *N.J.Super.* 454 (Law Div.1979); *Reiser v. Simon*, 63 *N.J.Super.* 297, 300–301 (App. Div.1960). Our Supreme Court has pointed out that "[f]ailure

---

[7]Although the three documents were purportedly admitted to probate, the originals were neither filed nor lodged with the Surrogate of Ocean County (except possibly for the will backer admitted to probate and the marked-up copy of the 1979 will which we received from the Ocean County Surrogate) nor the court clerk, but were retained by counsel. We obtained the originals of the documents which were proffered as codicils by respondents from counsel. It would appear that the originals thereof should have been in the custody of the court or the surrogate since they were admitted as codicils.

to perform that duty 'constitutes a disservice to the litigants, the attorneys and the appellate court.' " *Curtis v. Finneran,* 83 *N.J.* 563, 569–570 (1980), quoting *Kenwood Assocs. v. Englewood Bd. of Adj.,* 141 *N.J.Super.* 1, 4 (App.Div.1976). The duty to find facts and state conclusions of law is explicit in *R.* 1:7–4, iterated in connection with motions for summary judgment in *R.* 4:46–2, and mandated where there is an appeal by *R.* 2:5–1(b). Even where a motion is determined without oral argument pursuant to *R.* 1:6–2(d) that does not excuse a trial judge from performing this vital function. It is appropriate to remind both bench and bar, as stated in a somewhat different context in *Allegro v. Afton Village Corp.,* 9 *N.J.* 156, 161 (1952), that:

> [C]ourts exist for the sole purpose of rendering justice between parties according to law. While the expedition of business and the full utilization of their time is highly to be desired, the duty of administering justice in each individual case must not be lost sight of as their paramount objective. *Pepe v. Urban,* 11 *N.J.Super.* 385 (App.Div.1951).

On December 20, 1983 the judge issued a second letter opinion denying Nadeau's applications. The judge again denied admission of the marked-up will to probate and rejected Nadeau's contention that it should be considered along with the third handwritten document as a codicil. He entered an order reciting that the three handwritten documents were testamentary in nature, and that they republished and re-executed the 1979 will after the August 30, 1982 marriage. Accordingly, Nadeau was again denied his request for an intestate share as an omitted spouse and limited to an elective share. The judge certified his order as a final judgment and this appeal was taken.

Certain individual respondents made assertions in affidavits submitted on various applications which raised factual issues concerning decedent's alleged intent. Those assertions included that of respondent Elsie Gideon, alleged to be a friend of Gladys' since 1960, who said in her affidavit filed in the matter that after Gladys married appellant, she told Elsie that she would still provide for her in her will. She also stated therein

that Gladys never indicated to her after she married appellant that she had changed her mind about her will. An affidavit by Louise Gunther said that after Gladys married Nadeau she said that the marriage would not change the disposition of her estate, and that she had discussed this with Nadeau and "they both agreed that since he had a business of his own, there was no need to provide for him in her Will." She also stated her belief about the status of the marriage of Nadeau and decedent and that she had requested that Nadeau give her the burial instructions which Gladys had left. The judge did not refer in his decision to these assertions. Indeed, in concluding that the documents effected a republishing of Gladys' August 25, 1979 will, he relied solely on the signed burial instructions and his perception of testamentary intent.

In support of his argument of entitlement to an intestate share of the estate as an omitted spouse under *N.J.S.A.* 3B:5–15, Nadeau argues that the judge erred in admitting the hand-written documents to probate as codicils. He asserts that these documents have such a minimal impact upon the 1979 will that to allow them to deprive him of an omitted spouse's share under the statute would be unjust. He further argues that the judge acted hastily in admitting the first two written documents which bore the January 25, 1983 dates (the first also had a 1979 date) to probate in that he did not consider at the time the effect that their admission would have upon the omitted spouse statute. Nadeau argues that the documents so admitted were not testamentary in nature,[8] were not intended for probate and did not qualify it for probate, but were merely informal and advisory with respect to Gladys' burial wishes, and reflected no intention that they be considered codicils. Nadeau further argues that it is reasonable to assume that the testatrix would

[8]A possible exception to that argument by Nadeau appears in the document signed and dated December 19, 1979 and again signed over the date January 25, 1983, which allows Louise Gunther "to have her choice of any jewelry of any kind left by me real or imitation, or clothes, including coats."

not have attempted to prepare a will or codicil on her own because she had previously had wills professionally prepared and at the time of her death she had an appointment pending to make a new will with an attorney. Nadeau argues that not giving these writings effect as codicils would be consistent with the doctrine of probable intent and the theory behind the omitted spouse statute. In the alternative, Nadeau also argues that the judge erred in failing to admit to probate the marked photocopy of the will and that a hearing should have been held concerning where the documents were found.

The issue on this appeal is whether Nadeau, as decedent's sole heir, has a right to the entire estate as the intestate share of an omitted spouse or is limited to one-third of the estate as an elective share.[9] The statute, *N.J.S.A.* 3B:5-15, dealing with the rights of an "omitted spouse" provides in pertinent part:

a. If a testator fails to provide by will for his surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive the same share of the estate he would have received if the decedent left no will unless it appears from the will that the omission was intentional or the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence.

\*   \*   \*   \*   \*   ?   \*   \*

c. Notwithstanding any other provision of law to the contrary, this section shall apply only to wills executed on or after September 1, 1978.

Because Nadeau had not met decedent until after she had executed the 1979 will, the first of the above quoted limitations obviously does not apply. Nor did the three writings admitted by the judge to probate evince any intent to omit Nadeau. It is unknown also whether the decedent intended by these essentially repetitive writings of burial instructions to merely supplement or to supersede the earlier writings, thus raising a diffi-

---

[9]*N.J.S.A.* 3B:8-1, *et seq.* gives the surviving spouse the right to take an elective share of one-third of the augmented estate (defined in *N.J.S.A.* 3B:8-3), provided that at the time of decedent's death the surviving spouse had not been living separate and apart in different habitations or had not ceased to cohabit as man and wife.

cult question of probable intent. See, *e.g., In re Ericson's Estate,* 74 *N.J.* 300, 306 (1977); *In re Conway's Estate,* 50 *N.J.* 525, 527 (1967); *In re Morton's Estate,* 48 *N.J.* 42, 47 (1966); *Fidelity Union Trust Co. v. Robert,* 36 *N.J.* 561, 564 (1962). Our view of these writings, however, makes it unnecessary to consider that aspect any further. Moreover, there is nothing in the record to indicate sufficient transfers by decedent to Nadeau outside the will that would demonstrate decedent's intent to otherwise provide for Nadeau. As noted, however, the trial judge reasoned that the writings were admissible as codicils, thus republishing the 1979 will and rendering inapplicable the protections afforded by *N.J.S.A.* 3B:5–15.

▮ We agree with the trial judge's reasoning with respect to the effect a validly executed codicil, which was intended to republish a pre-existing will, would have on the applicability of *N.J.S.A.* 3B:5–15. It is well settled that republication of a will by codicil has the effect of causing the will to be construed as of the date of the codicil. *First-Mechanics Nat'l Bank v. Norris,* 134 *N.J.Eq.* 229, 233, 34 *A.*2d 746 (Ch.1943); *Ryder v. Myers,* 113 *N.J.Eq.* 360, 366, 167 *A.* 22 (Ch.1933), aff'd o.b. 115 *N.J.Eq.* 169, 169 *A.* 691 (E. & A.1933); 95 *C.J.S. Wills* § 303e(1) at 100–101; and 2 *Page on Wills* § 23.1 at 572–573 (Bowe-Parker rev. 3d ed. 1960). Thus, in the instant case, assuming the three documents admitted as codicils could have the effect of republishing the will, this would have made decedent's 1979 will effective as of the date of these writings. The writings, however, bore dates after the marriage between Nadeau and decedent. Thus, if they republished the will they could have the effect of rendering inapplicable the protections to a surviving spouse granted by *N.J.S.A.* 3B:5–15. Where we part with the trial judge's reasoning is on the effect of the three writings here. For the reasons stated below we do not consider the three documents admitted to probate herein as effectuating a republication of the 1979 will.

In the usual case, to be effective as a testamentary disposition a writing must be signed by the testator and two witnesses. *N.J.S.A.* 3B:3–2. However, a will or writing which does not comply with *N.J.S.A.* 3B:3–2 may nevertheless be valid as a holographic will whether or not witnessed, "if the signature and material provisions" are in the testator's handwriting. *N.J.S.A.* 3B:3–3.[10] See *In re Estate of Cunningham,* 198 *N.J.Super.* 484, 489 (Law Div.1984) (testator's signature need not be at end of document).

█  █ Like a will a codicil may be valid in holographic form. 94 *C.J.S. Wills* § 207 at 1048–1049 (1956). See, *e.g., In re Sargavak's Estate,* 35 *Cal.*2d 93, 216 *P.*2d 850 (1950); *Manikowske v. Manikowske,* 136 *N.W.*2d 465 (N.D.Sup.Ct.1965); *In re Spies Estate,* 86 *Cal.App.*2d 87, 194 *P.*2d 83 (1948); *Succession of Marshall,* 126 *So.*2d 698 (La.Ct.App.1961). Thus, a holographic codicil, like any other codicil, republishes a will to the extent that the will is not altered or revoked by the codicil. See *Kennedy v. Mockler,* 38 *N.J.Super.* 35, 50–51 (App.Div. 1955); *King v. Smith,* 123 *N.J.Super.* 179, 181 (Chan.Div.1973), aff'd 129 *N.J.Super.* 168 (App.Div.1974); 95 *C.J.S. Wills* § 303a(1) at 95–96 (1957); Clapp, *Wills and Administration,* 5 N.J. Practice § 64, p. 234–235 (rev. 3d ed. 1982).

█ Although no precise form of words nor apparent intention to republish is necessary, we hold that a codicil, and particularly a purported holographic codicil, must specifically or by clear implication refer to that will or be attached to it in order to effectuate a republication of the will. See *Smith v. Runkle,* 97 *A.* 296 (Prerog.1916), aff'd o.b. 86 *N.J.Eq.* 257, 97 *A.* 1085 (E. & A.1916); *McCurdy v. Neall,* 42 *N.J.Eq.* 333, 336, 7

---

[10]One of the changes in the revision of the probate laws effected by *L.*1981, *c.* 405, was the authorization of holographic wills. *In re Estate of Cunningham, supra,* 198 *N.J.Super.* at 487–488. *N.J.S.A.* 3B:3–3 provides:

> A will which does not comply with *N.J.S.* 3B:3–2 is valid as a holographic will, whether or not witnessed, if the signature and material provisions are in the handwriting of the testator.

*A.* 566 (Prerog.1886); 2 *Page on Wills, supra* §§ 23.5 and 23.6, at 578–582; see also *In re Estate of Kretz'*, 410 *Pa.* 590, 189 *A.* 2d 239, 243 (1963); *Delly v. Seaboard Citizens Nat'l Bank of Norfolk*, 202 *Va.* 764, 120 *S.E.*2d 457, 459 (1961); *In re Foulds' Will*, 13 *A.D.*2d 16, 212 *N.Y.S.*2d 519, 524 (App.Div.1961), aff'd 10 *N.Y.*2d 1027, 225 *N.Y.S.*2d 46, 180 *N.E.*2d 434 (1962); *In re Estate of Poorman*, 27 *Misc.*2d 375, 211 *N.Y.S.*2d 440, 442 (Surrog.Ct.1960). Hence, there would be a republication of a will if the codicil, whether formally executed or complying with the holographic provisions of our probate law, sufficiently referred to the will to establish the testator's intent to republish.

In the instant case none of the three writings accepted by the judge referred back to the testatrix' 1979 will. Decedent had executed a will prepared by an attorney, and had intended to see an attorney about a new will. The 1979 will had been executed almost two years before the change in our probate law effected by *L.*1981, *c.* 405 on May 1, 1982. There is nothing to indicate that the decedent intended to rely on the authorization for holographic provisions when the writings bearing a date about nine months after the effective date of the act came into being (assuming they were written on the date shown). Essentially the documents contained instructions for decedent's burial and were precatory in nature rather than testamentary in nature. 94 *C.J.S. Wills* § 207 at 1048 (holographic codicil invalid unless executed with testamentary intent); see *Pullen v. Pullen*, 249 *Ak.* 489, 460 *S.W.*2d 753, 756–757 (1971) (holographic writing no more than a memorandum and not entitled to probate as a codicil to will); *Herndon v. Barnes*, 519 *S.W.*2d 823, 824 (Ky.Ct.App.1975). Nor did they refer to decedent's will or state an intent to republish the August 25, 1979 will. Indeed, based on the modifications between the three documents that were admitted into evidence there is no reason to suspect that decedent wanted or expected that all three of those documents would be equally effective as opposed to consecutively effective.

■ Although *N.J.S.A.* 3B:3–16 allows alteration of a devise or clause of a will by (1) another will, (2) a codicil or (3) "some other writing," by its own terms it requires reference to the alteration of a devise or clause of a will by requiring that the will, codicil or other writing "declar[e] ... the alteration." Nothing in the documents submitted meets that requirement. All of the changes authorized by *N.J.S.A.* 3B:3–16 must be "executed in the manner in which wills are required to be executed." Even though the handwritten documents which had been admitted to probate may meet the requirements of *N.J. S.A.* 3B:3–3 for holographic wills, they are not sufficient to constitute "other writings" within the ambit of *N.J.S.A.* 3B:3–16 with respect to altering a will, because none of those writings purport to alter the will or declare such an intent. Each writing is essentially entitled "burial instructions," and that in effect is their thrust. There is no basis to conclude that they evidence any intent by the decedent that they alter or republish her will. Even the reference to Louise Gunther being allowed to choose from decedent's jewelry and clothing,[11] does not constitute a declaration that the decedent wanted to amend her will to so provide.

■ Before a court can find an alteration in a will by some other writing, it must first have a writing which purports to alter that will. When a codicil refers to an existing will, it provides a basis for such an intent. The writings offered for probate here do not make such declaration. What these documents do disclose is that Gladys was considering her death, as well as indicating the location of certain documents. There is no basis for concluding therefrom that she had any intent to

---

[11]But for the holographic will aspect, that reference would not have satisfied the provisions of *N.J.S.A.* 3B:3–11 as of the 1979 date because the probate act did not take effect until May 1, 1982 (*L.*1981, *c.* 405), and further because under *N.J.S.A.* 3B:3–11 the will had to refer to a written statement or list to dispose of items of tangible personal property not otherwise specifically disposed of by the will.

affect the provisions in her 1979 will. Hence, we conclude that none of these writings were effective as codicils or other writings capable of altering decedent's will or operating to republish it.

In our view it would be inappropriate to hold that a handwritten document which merely discusses funeral instructions should by that fact alone not only qualify the document for probate under *N.J.S.A.* 3B:3–3, but republish a will. Such a rule would have the potential of creating much mischief and uncertainty with respect to the effect such documents would have on a will.

Our conclusion is not inconsistent with the decision in *In re Sapery,* 28 *N.J.* 599 (1959), upon which respondents rely. There the court held that a validly executed codicil which only nominated an executor to the estate could be admitted to probate, notwithstanding the fact that a prior existing will was presumed destroyed. Respondents cite this case for the principle that a document which does not dispose of property can nevertheless be considered testamentary in nature. They thus assert that the three hand-written documents which do not dispose of property, were correctly admitted to probate.

We find respondent's reasoning unpersuasive. While it is true that the codicil admitted to probate in *Sapery* did not dispose of property, that document referred to and purported to amend and republish the will (*id.* at 603), and it was admitted to probate because the court presumed that the deceased "intended to continue the codicil in existence as a testamentary appointment of an executor to administer his estate." *Id.* at 610. The document was testamentary in nature insofar as its purpose was for administration of the testator's estate. Here, as noted, the three documents admitted to probate were essentially not testamentary, but precatory in nature. Moreover, these documents were not " 'a testifying of the mind' signifying the mental action requisite to such testamentary declaration." *Id.*

In light of our determination and our comments as stated above, we need not address the question of whether the judge erred in failing to admit the marked-up will to probate. Nor need we address the failure of the judge to hold a hearing on where the documents were found. The judgment of the trial court admitting the three writings to probate as codicils is reversed. We remand with direction to enter an order declaring that Nadeau is entitled to take as an "omitted spouse" under *N.J.S.A.* 3B:5–15 and for such further proceedings as may be necessary to effectuate same. We do not retain jurisdiction.