711 A.2d 312 (1998)
312 N.J.Super 1
GOTHIC CONSTRUCTION GROUP, INC., a New Jersey Corporation, Plaintiff-Appellant,
v.
PORT AUTHORITY TRANS-HUDSON CORPORATION, a Wholly Owned Subsidiary of the Port Authority of New York and New Jersey; Port Authority of New York and New Jersey, a Body Corporate and Politic Created by Interstate Compact, Defendants-Respondents.
Armengol CUEVAS, Bruce Fill, Pedro Montano, and Hipolito Roldan, individually; and Hudson County District Council of Laborers Benefits-Funds, Plaintiffs,
v.
GOTHIC CONSTRUCTION GROUP, INC., a New Jersey Corporation, Robert Charles Enterprises, Inc., a New York Corporation, RCE/GCG Construction, Neal Tanis, Individually, and Robert Stivala, Individually, and the Port Authority of New York and New Jersey (for Discovery Purposes only), Defendants.
FIP STRUCTURAL SYSTEMS, Plaintiff,
v.
GOTHIC CONSTRUCTION GROUP, INC., Defendant.
BLUE CIRCLE RAIA, INC., Plaintiff,
v.
GOTHIC CONSTRUCTION GROUP, INC., a Corporation of the State of New Jersey, and Neal M. Tanis, Individually, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued March 30, 1998.
Decided April 29, 1998.
*313 George A. Kelman, Roseland, for plaintiff-appellant (Hannoch Weisman, attorneys; Robert C. Epstein, of counsel and on the brief; Mr. Kelman, also on the brief).
Michael E. Jankoski, New York City, for defendants-respondents (Hugh H. Welsh, attorney; Mr. Jankoski, on the brief).
Before Judges PETRELLA and STEINBERG.
The opinion of the court was delivered by
PETRELLA, P.J.A.D.
Gothic Construction Company (Gothic) appeals from an order entered by the Law Division just before a scheduled trial date dismissing the complaint. No findings were made and the judge gave no reasons for the order.
This litigation arises out of a contract between the Port Authority Trans-Hudson Corporation (PATH), a subsidiary of The Port Authority of New York and New Jersey (Port), and a joint venture between Gothic and Robert Charles Enterprises, Inc. (Gothic) for construction of a parking deck in the Journal Square Transportation Center parking garage in Jersey City, New Jersey. PATH advertised for bids for the Journal Square Project on September 13, 1993. On September 30, 1993, the Gothic joint venture submitted a bid proposal for the project. The contract was awarded to this joint venture on December 23, 1993.
Under the contract, Gothic was required to remove the top layer of concrete on the parking deck by means of hydrodemolition to expose the "rebar"; after this was completed, Gothic was to re-pour the parking deck using a special weather resistant concrete mix. Gothic had never before used either the hydrodemolition technique or this particular mix of concrete.
The contract provided for completion of the work within 210 days. However, the work was subject to numerous delays due to the weather, unexpected technical reasons, and imprecise descriptions in the contract specifications. As a result, Gothic requested an extension of time, which was granted with a specified schedule of milestone dates. Soon thereafter PATH informed Gothic that a milestone date had been missed and requested that the work be completed within a week. The work was completed one week after the end of the extension.
On September 26, 1994, PATH's Chief Engineer, Eugene J. Fasullo (Chief Engineer), wrote Gothic that it was in breach of the contract. On October 4, 1994, Gothic's letter acknowledged that PATH was terminating the contract, but Gothic did not accept PATH's declared breach. Instead, it wrote that it considered PATH the breaching party. Gothic characterized PATH's deadlines as "unrealistic," and vacated the project under protest. According to PATH, at that point 25% of the work had been completed.
*314 After Gothic vacated the project, bids were solicited for a different contractor to complete the Journal Square Project. The schedule was recalculated by PATH in a new bid solicitation, which PATH justified in an internal memo, stating in part:
With the knowledge and experience gained from the original work effort, and knowing the technical expertise and construction requirements of the contract, staff is now recommending that the following five contractors be solicited ... because of the need to ... complete the hydrodemolition work under non-freezing conditions, the staff recommends that the following contractors because of their experience, financial security, prior job performance on PATH projects, and expertise be approved...
The new contract was awarded to a new contractor based on a higher bid than the one on which Gothic had been awarded its contract.
Gothic[1] filed a complaint against PATH on August 30, 1995, on the ground of breach of contract and in the alternative, quantum meruit. In late November 1995 PATH answered, counter-claimed, demanded a jury and asserted that Gothic had breached the contract. As its fifteenth separate defense, PATH alleged that Gothic "failed to satisfy the contractual [sic] required alternative dispute resolution mechanism which is mandated before resorting to the judicial system." That defense apparently referred to the requirement contained in Chapter IV, Paragraph 16 of the Contract, which stated in relevant part:
To resolve all disputes and to prevent litigation the parties to this Contract authorize the Chief Engineer to decide all questions of any nature whatsoever arising out of, under, or in connection with, or in any way related to or on account of, this Contract (including claims in the nature of breach of Contract or fraud or misrepresentation before or subsequent to acceptance of the Contractor's Proposal and claims of a type which are barred by the provisions of this Contract) and his decision shall be conclusive, final and binding on the parties ...
All such questions shall be submitted in writing by the Contractor to the Chief Engineer for his decision, together with all evidence and other pertinent information in regard to such questions, in order that a fair and impartial decision may be made. In any action against PATH relating to any such question the Contractor must allege in his complaint and prove such submission, which shall be a condition precedent to any such action. No evidence or information shall be introduced or relied upon in such an action that has not been so presented to the Chief Engineer. [Emphasis added]
The Chief Engineer mentioned in this paragraph is the same person who wrote the September 26, 1994 letter declaring Gothic in breach and terminating its further performance under the contract.
On January 17, 1997, twelve days before the trial, PATH moved on short notice (the scheduled trial date was January 29) to dismiss all claims against it and the Port in the consolidated matters.[2]
The motion by PATH and the Port recited only a vague and general request for a motion to dismiss for failure to state a claim. However, the cover of their supporting brief included reference to a motion to dismiss for lack of jurisdiction; that issue was not briefed either at the trial level or on appeal and is considered waived. That brief stated that the motion requested dismissal due to Gothic's failure to state a claim and the court's lack of jurisdiction, apparently based upon Paragraph 16 of the agreement.
Gothic asserts that from the time PATH's answer was filed in 1995 until just before the scheduled trial date of January 29, 1997, PATH never pressed for alternative *315 dispute resolution. The trial judge entered two orders on February 7, 1997. The first dismissed all of the claims against PATH without prejudice; the second repeated that determination, but struck out a provision included by Gothic's attorneys that the court order arbitration before a neutral arbitrator of the American Arbitration Association. Neither the order nor the record contains reasons or findings for the order. Nor does it indicate any procedure to be followed. This appeal resulted.[3]

I.
As noted, the trial judge entered two orders without stating any reasons for his decision.[4]
R. 1:7-4 states:
In civil actions tried without a jury and on every motion decided by written orders that are appealable as of right, the court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusion of law thereon.
Naked conclusions do not satisfy this rule; rather, the court has a duty to state its findings of fact and correlate them to relevant legal conclusions. Italiano v. Rudkin, 294 N.J.Super. 502, 505, 683 A.2d 854 (App. Div.1996); Curtis v. Finneran, 83 N.J. 563, 570, 417 A.2d 15 (1980); Matter of Will of Marinus, 201 N.J.Super. 329, 338-339, 493 A.2d 44 (App.Div.); certif. denied, 101 N.J. 332, 501 A.2d 981 (1985). Failure to do so "constitutes a disservice to the litigants, the attorneys, and the appellate court." Kenwood Assocs. v. Bd. of Adj. of City of Englewood, 141 N.J.Super. 1, 4, 357 A.2d 55 (App. Div.1976). We are thus left merely with the arguments raised on this appeal. Although we could remand for findings, the issue is largely one of law, except perhaps for a potential issue of waiver of the contract provision, and hence we address the issue on the merits in the interests of justice and in view of the elapsed time.

II.
Gothic did not submit to the alternate dispute resolution provision of Paragraph 16 of the contract. It argues that this clause calls for what is in effect arbitration, and the arbitrator designated under the contract is the very Chief Engineer who informed Gothic that it was in breach of the contract. In essence, his function as "arbitrator" would be to determine whether or not his own decision to terminate the contract was justified.
PATH argues that the contract requires use of this alternative dispute mechanism which we now hold is tantamount to arbitration hereas a precondition to suit and that if Gothic was not willing to use the dispute mechanisms in the contract, it should not have signed the contract.
Although Paragraph 16 does not characterize the procedure as an "arbitration," clauses of this type have consistently been held to be tantamount to an arbitration clause. See, e.g., Chimes v. Oritani Motor Hotel, Inc., 195 N.J.Super. 435, 480 A.2d 218 (App.Div.1984); Gauntt Const. v. Delaware River & Bay Auth., 241 N.J.Super. 422, 575 A.2d 70 (Law Div.1989), rev'd on other grounds 241 N.J.Super. 310, 575 A.2d 13 (App.Div.1990); Shribman v. Miller, 60 N.J.Super. 182, 158 A.2d 432 (Ch.Div.1960). This is particularly so since PATH argues that the Chief Engineer's decision can thereafter be challenged in court under the contract's terms only on grounds which are essentially those limited bases to set aside an arbitrator's award.
Under the circumstances of this case, considering the fact that Gothic's contract with PATH was terminated, and that the dispute did not arise in the course of continuing performance under the contract, we construe *316 Paragraph 16 of the contract as the equivalent of imposition of a binding arbitration requirement with the drafter of the contract in effect designating itself as the arbitrator.
Hence, consideration of arbitration principles is appropriate. Arbitration and other forms of alternate dispute resolution are generally favored by the courts. See Tretina Printing, Inc. v. Fitzpatrick & Assocs., 135 N.J. 349, 358, 640 A.2d 788 (1994); Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 489, 610 A.2d 364 (1992). Statutory authority for arbitration procedures can be found at N.J.S.A. 2A:24-1 to -8. Arbitration as a substitute for litigation is most effective when judicial interference is kept to a minimum. Barcon Assocs. v. Tri-County Asphalt Corp., 86 N.J. 179, 187, 430 A.2d 214 (1981). Once an award is rendered by an arbitrator, it can only be vacated on limited grounds of (a) corruption, fraud, or undue means; (b) evident partiality or corruption in the arbitrators; (c) misconduct by the arbitrators; or (d) imperfect execution of the arbitrators' powers resulting in a lack of a mutual, final and definite award. N.J.S.A. 2A:24-8. Modification of an award is generally limited to (a) evident mistake; (b) where the award is outside the scope of the matter submitted; and (c) where the form, as opposed to the merits, of the award is deficient. N.J.S.A. 2A:24-9.
We considered a similar provision providing for binding dispute resolution in a musician's union contract, where the arbitration provision was challenged for partiality of an arbitrator in Chimes v. Oritani Motor Hotel, Inc., supra (195 N.J.Super. 435, 480 A.2d 218). There, the plaintiff, a singer, contracted with the Oritani Hotel to sing in its lounge under the standard "contract blank" prepared by the American Federation of Musicians of the United States and Canada (AFM), a labor organization for entertainers. Id. at 439, 480 A.2d 218. That contract provided that the sole remedy for disputes under the contract was a submission to the International Executive Board of the AFM for a determination that would be "conclusive, final and binding upon the parties." Id. at 439-440, 480 A.2d 218. We held that this was a contract of adhesion, and found what we considered an arbitration provision in the contract to be void as against public policy and unenforceable, stating:
Thus, plaintiffs were bound to include in the contract with defendant terms and conditions for dispute resolution which accorded with the dictates of the AFM. In the circumstances we conclude that the socalled arbitration provision, giving the Board power to decide disputes between its members and defendant, is contrary to public policy. The relationship between the Board and its members is obviously too close to assure the dispassionate and impartial resolution of disputes between AFM members and non-members .... "complete contractual autonomy in the choice of an arbitrator" must give way to "the common law requirement of fair procedure."
[Id., quoting Graham v. Scissor-Tail, Inc., 28 Cal.3d 807, 171 Cal.Rptr. 604, 623 P.2d 165 (Sup.Ct.1981) ].
Another analogous situation was considered in Gauntt Const. v. Delaware River & Bay Auth., supra (241 N.J.Super. 422, 575 A.2d 70), rev'd on other grounds, 241 N.J.Super. 310, 575 A.2d 13 (App.Div.1990), where the plaintiff contractor was the successful bidder on a contract with the Delaware River and Bay Authority. The contract had a similar provision for a "final and binding" resolution of disputes by the Authority's Director. Id. at 424, 575 A.2d 70. Despite the plaintiff's awareness of the provision when it signed the contract, the Law Division referred to the provision as a "so-called arbitration provision," id. at 429, 575 A.2d 70, and considered the contract as one of adhesion, noting it was "the product of public bidding," was prepared by the Authority, and it was standard practice for the Authority to use that clause. Furthermore, the clause was found "totally lacking in procedural safeguards." Id. at 430, 575 A.2d 70. The Law Division applied New Jersey law, and held that the appearance of bias from the fact that the Director was the arbitrator was adequate to "make his role unacceptable as a matter of law," without the need to prove any actual bias. Id. at 431, 575 A.2d 70. We reversed, concluding that Delaware law applied, and *317 remanded for consideration under that state's law. 241 N.J.Super. at 310, 575 A.2d 13.
Here, Gothic's contract with PATH has the hallmarks of a contract of adhesion, similar to the contracts in Chimes and Gauntt. The contract was obtained through the bidding process and Gothic had no real say as to its provisions. It is evident that utilizing PATH's Chief Engineer as arbitrator presents a conflict of interest. As in Gauntt, the Chief Engineer has "unbridled decision making power" under the dispute resolution clause. Gauntt Const. v. River & Bay Auth., supra (241 N.J.Super. at 430, 575 A.2d 70). Hence, because Gothic and PATH did not have equal bargaining power, PATH's argument that the clause is enforceable because Gothic signed it is unpersuasive.

III.
Another reason that the dismissal was erroneous was because an issue of bias was raised and not resolved. While the policy behind arbitration generally is to contest arbitration awards after the arbitration is held, and not before the arbitration takes place, as a matter of judicial economy and to encourage use of arbitration, see, e.g., Faherty v. Faherty, 97 N.J. 99, 107-111, 477 A.2d 1257 (1984), where bias is concerned, the situation is different. In Barcon Assocs. v. Tri-County Asphalt Corp., supra (86 N.J. 179, 430 A.2d 214), Barcon had entered into a contract with Tri-County containing an arbitration clause. When a dispute arose the parties resorted to arbitration and an award was rendered. Id. at 183-184, 430 A.2d 214. When Barcon sought confirmation of that award, Tri-County successfully counterclaimed to vacate the award on the ground that one of the arbitrators had had business dealings with Barcon which caused him to be biased. The Supreme Court, in a 4-3 decision, agreed that the evidence of potential bias was sufficient to taint the award. The Court noted:
No actual bias or partiality on the part of [the arbitrator in question] has been alleged. Nevertheless, throughout the pendency of the arbitration proceedings, [he] was engaged in business dealings with and was owed substantial sums by the party which designated him. This relationship creates too great an appearance of partiality to be permitted.
[Barcon Assocs., 86 N.J. at 191, 430 A.2d 214.]
Barcon set forth a procedure for prospectively dealing with the situation where an arbitrator appears to have such a bias and requires the arbitrator to disclose his party affiliation. Ibid. Noting that "[t]he mere fact that a party-designated arbitrator disclosed a prior relationship with the party will not necessarily disqualify him," the Court recommended that the non-affiliated party, if necessary "seek judicial determination of whether that arbitrator appears to be too partial to be permitted to participate in the arbitration."
This procedure is thus consistent with the goal of minimizing judicial interference in the arbitration process, and recognizes that the parties, as active participants in their respective industries, are well situated to decide when to object because contacts between an arbitrator and the party designating him create too great a likelihood of bias.

[Ibid.]
However, if an arbitrator makes full disclosure and the other party does not object at that time, the unaffiliated party will have waived any later right to object on that grounds. Id. at 195, 430 A.2d 214 (emphasis added). Barcon expresses a preference for bringing these objections before, and not after arbitration, recognizing it is wasteful and unfair to arbitrate before a biased arbitrator. Id. at 197, 430 A.2d 214. As the Court noted, "arbitration should be conducted by arbitrators, not by the parties themselves or their legal advocates." Id. at 199, 430 A.2d 214. Hence, a challenge to the arbitration proceedings based upon claimed bias of an arbitrator is properly raised at the commencement, not the conclusion of proceedings.
In this case, the arbitration has not yet proceeded to an award. Although Gothic was aware of the contract provision in Paragraph 16 and did not object to it when the contract was executed, it did not thereby *318 waive its bias objection. As in Chimes and Gauntt, the provision was part of a standard form contract and that contract is a contract of adhesion. After Gothic was terminated by the Chief Engineer it was free to institute suit, and later to object to the disposition of the Chief Engineer on the ground of bias or partiality.[5]Barcon, supra.
Given the fact that the Chief Engineer posed a high potential of bias towards PATH, we reverse the judge's grant of the motion to dismiss, and hold that the bias issue must be determined before any arbitration or alternate dispute resolution may proceed.
Reversed and remanded for further proceedings consistent with our opinion.
NOTES
[1] In its motion brief in the trial court PATH questioned the ability of Gothic to bring suit in its own name without including the other member of the joint venture as a necessary party. That issue is briefly raised by PATH on appeal as a "calculated wrong." The issue is not discussed further and PATH points to no prejudice. Hence, we bypass the matter.
[2] This was not the first scheduled trial date.
[3] During the pendency of the appeal we denied PATH's motion to strike certain documents and references from the record and also denied Gothic's counter motion to suppress PATH's brief.
[4] We are aware that under Paragraph 16 of the contract between PATH and Gothic, submission to the Chief Engineer was made a condition precedent to resort to the courts. Where the contract makes arbitration or alternate dispute resolution a condition precedent to suit, a dismissal, rather than a stay, would be appropriate where arbitration is ordered to proceed. See Shribman v. Miller, 60 N.J.Super. 182, 158 A.2d 432 (Ch.Div.1960).
[5] In light of our decision we need not address whether PATH's participation in the litigation for over a year, and its eleventh hour motion grounded in the contract's alternate dispute clause, was untimely or a waiver or abandonment of the issue. Cf. Williams v. Bell Telephone Laboratories, Inc., 132 N.J. 109, 118-120, 623 A.2d 234 (1993) (despite assertions of statute of limitations defense in answer, failure to pursue that defense through three and one-half years of litigation led to waiver of that defense).