In the Matter of the Probate of the Will of HELEN E. FOULDS, Deceased. JANE B. BROGAN et al., Appellants; NEW YORK TRUST COMPANY et al., Respondents.

Third Department, March 28, 1961.

*Joseph T. Arenson, Samuel E. Harwitz, Samuel Lawrence. Brennglass, Waldemar J. Dittmar* and *Homer I. Harris* for appellants.

*Shearman & Sterling & Wright (Robert M. Feeley, Henry B. Guthrie* and *George W. Foley* of counsel), for New York Trust Company, respondent.

*Lord, Day & Lord (Sherman Baldwin, William H. West, Jr., Saul L. Sherman* and *Anne Sidamon-Eristoff* of counsel), for Metropolitan Museum of Art, respondent.

*Frederick G. Bascom* for First National Bank of Glens Falls and others, respondents.

*Frank Hurley* for Glens Falls Cemetery Commission, respondent.

REYNOLDS, J. This is an appeal from an order of the Surrogate of Warren County, dated February 4, 1960, denying appellants' application to vacate the decree of said court dated March 10, 1959, which admitted to probate as the last will and testament of Helen E. Foulds, four writings — a will dated March 11, 1938 and three codicils dated respectively April 28, 1941, April 8, 1943 and May 12, 1949.

The three appellants, two grandnieces and a grandnephew of the deceased and her only distributees, defaulted after they had been personally served with a citation. They contend that probate should be reopened because the citation was defective and misleading; the proponents of the will were guilty of constructive fraud in securing probate; and, in any event, that they have shown a reasonable probability of success were the decree to be vacated, which in the interests of justice constitutes sufficient cause for reopening.

The Surrogate, in his investigation into the facts and circumstances to determine if probate should be reopened, had before him the four instruments eventually probated; an alleged copy of the 1932 will; and the affidavits of the attorney who drew the 1949 codicil, of her financial advisor who ordered its preparation, of the witnesses to the codicil, of the caretaker of her former home, of her personal physician and closest friend, and of an officer of the bank in which her 1938 will was found after her death. All these parties were cross-examined at some length by the attorney for the appellants and other witnesses were

produced. The Surrogate held at the conclusion of the proceeding that the citation was sufficient, that respondents were in no way guilty of fraud and that the appellants failed to show a reasonable probability of success, and therefore refused to vacate the decree.

The history of the various wills and codicils shows the testamentary plan of deceased as follows:

In 1932 testatrix made a will which revoked a prior will of 1925. By its terms she left her real property to her husband and certain small monetary bequests to certain legatees. With the remainder, which was by far the major portion of her estate, valued at several million dollars, she established a trust whereby her husband would, upon her death, receive an annual income of $50,000 and the Church of the Messiah would receive $2,500. The trust was to terminate at her husband's death, $50,000 of the corpus going to the Episcopal Church and the balance going to the Metropolitan Museum of Art. As executors she appointed her husband, Frank L. Dunnell and Cortland Betts.

On April 4, 1934, her husband having died, she executed a codicil to her will whereby she directed the sale of her jewelry and furniture and bequeathed $3,000 to the First National Bank of Glens Falls for cemetery lot care. In addition, she appointed Henry B. Guthrie as executor in the event that the two surviving executors, Dunnell and Betts, failed to serve.

Shortly thereafter, on October 5, 1934, Mrs. Foulds executed a second codicil to her 1932 will, the sole provision being the revocation of the appointment of Guthrie as alternate executor.

Less than two months later, on November 30, 1934, the deceased executed a third and final codicil to the 1932 will providing for the sale of her realty which had previously been left to her deceased husband, the proceeds of the sale to be given to the museum.

In 1936, Mrs. Foulds executed another will which was, in the main, a consolidation and modernization of her prior testamentary scheme evidenced by the 1932 will and the three codicils thereto. Under this will her potential executors were Dunnell, Andrew Morrison and the First National Bank of Glens Falls. Cortland Betts was dropped.

Finally, on March 11, 1938, she executed the will that was admitted to probate. The dispositive provisions differed from the 1932 and 1936 wills· in only one major respect — the establishment of a $50,000 trust for the Dr. Thomas Hammond Foulds Memorial Laboratory, named in honor of her late husband. She appointed Dunnell and Morrison as her executors, the New York Trust Company being designated to serve in their failure.

By the codicil of April 28, 1941, the appointment of Dunnell was revoked, Morrison and the New York Trust Company being made sole executors.

The April 8, 1943 codicil made a small dispositive change which benefited the museum.

Finally, we reach deceased's last testamentary instrument, the codicil of May 12, 1949, which reads as follows:

"I, HELEN E. FOULDS, of the City of Glens Falls, New York, hereby make, publish and declare this to be *a codicil to my Last Will and Testament dated and executed by me on March 3, 1932 and the codicils thereto dated and executed by me on April 4, 1934, October 5, 1934 and November 30, 1934,* wherein and whereby I appointed *Cortland Betts* one of the Executors of my said Last Will and Testament, and whereas the said Cortland Betts is now deceased, I hereby make, constitute and appoint Blake W. Francis, of the City of Glens Falls, New York, Executor of my said Last Will and Testament in the place and stead of the said Cortland Betts.

" In all respects except as modified by this codicil, I hereby ratify and confirm all the provisions of my said will and codicils." (Emphasis supplied.)

Upon deceased's death in 1958, a futile search was made for the 1932 will. The only testamentary papers found were the 1938 will and the 1941, 1943 and 1949 codicils. The 1949 codicil was in the possession of Blake W. Francis who was the executor named therein. The remaining instruments were found in deceased's safe-deposit box in the First National Bank of Glens Falls.

The citation served upon appellants recited that an application had been made to the Surrogate's Court of Warren County for the admission to probate as the last will and testament the four found writings mentioned above and further recited: " * * * a writing bearing date the 11th day of March 1938, purporting to be the Last Will and Testament of said deceased; a writing bearing date the 28th day of April 1941, purporting to be a codicil to said Last Will and Testament; a writing bearing date the 8th day of April 1943, purporting to be a codicil to said Last Will and Testament and to said codicil bearing date the 28th day of April 1941; and a writing bearing date the 12th day of May 1949, which purports to be a codicil to a will of said deceased dated March 3, 1932 and to codicils dated respectively, April 4, 1934, October 5, 1934, and November 30, 1934 to a will of said deceased dated March 3, 1932, said writing bearing date the 12th day of May 1949 being offered for probate as a codicil which appoints a co-executor of the above-mentioned

will and codicils of such deceased which bear date, respectively, the 11th day of March 1938, the 28th day of April 1941, and the 8th day of April 1943.''

In our view this citation gave due notice of the probate proceeding and was not defective or misleading. Section 53 of the Surrogate's Court Act provides that a citation ''must substantially set forth: * * * 4. The object of the proceeding in regard to which the persons cited are required to show cause ''. The object here was to offer for probate four writings as the last will and testament of Helen E. Foulds. The citation identified the four writings offered for probate by date and described each one individually. In connection with the codicil of May 12, 1949, the citation plainly stated that it purported to be a codicil to a will dated March 3, 1932 and to codicils dated April 4, 1934, October 5, 1934 and November 30, 1934 respectively, and that it was being offered for probate as a codicil appointing a coexecutor of the will dated March 11, 1938 and the codicils dated April 28, 1941 and April 8, 1943.

Such a clear statement of the object of the proceeding could not be confusing or misleading, and the Surrogate was justified in holding the citation sufficient.

On this record there is no basis for the claim that the probate proceeding constituted a fraud upon the Surrogate or upon the appellants.

Appellants' remaining ground for seeking vacation of the probate decree is that they have shown a reasonable probability of success. If such be the case their petition to reopen probate should here be granted in the interests of justice (Surrogate's Ct. Act, § 20, subd. 6, § 40; *Matter of Droney,* 231 App. Div. 674; *Matter of Abrial,* 286 App. Div. 916). Appellants maintain that the laws of intestacy must govern the distribution of the estate because: (1) the 1949 codicil, being on its face clearly and unambiguously a codicil to the 1932 will and codicils thereto served to re-establish that will while simultaneously revoking the 1938 will and its codicils, and (2) the 1932 will, not being found, must be presumed to have been revoked *animo revocandi* subsequent to the execution of the 1949 codicil.

While under proper circumstances varied legal presumptions may aid in reaching such results, a codicil may revive a revoked will or revoke an effective will only if this accords with the testator's intent. In its investigations and determination the court may examine all relevant facts surrounding the preparation and execution of the codicil to determine this intent (*Matter of Campbell,* 170 N. Y. 84; *Matter of Cable,* 213 App. Div. 512, affd. without opinion 242 N. Y. 510). The Court of Appeals in

*Campbell* stated (pp. 86-87): "Of course, there can be no question that the purpose of the testatrix was to re-establish her earlier will; for the title given to the instrument, its subject-matter and the circumstances of its preparation, with the will before her, clearly indicate it. Equally clear, too, should it be that the testatrix purposed the abandonment of her second will."

Thus, the execution of a codicil which refers to a prior revoked will by date, though not specifically republishing the will or revoking an intervening will, indicates an implied intent that the prior will be re-established and the intervening will be revoked (*Matter of Campbell, supra*; *Brown* v. *Clark*, 77 N. Y. 369, 375-377; *Van Cortlandt* v. *Kip*, 1 Hill 590, 595). But the doors are not thereby closed to the submission of extrinsic evidence to show that the deceased never in fact intended such a result (*Matter of Campbell, supra*).

The intent of testatrix in the instant case is clear. It was apparent throughout that she desired to leave most of her estate to the Metropolitan Museum of Art. She never was concerned with the welfare of her distant relatives and the record suggests that during her long stay at a hospital to which she was confined during her latter years there was no correspondence or communication between them, or that she was visited by those who are now claiming her entire estate. There was never any change in her general testamentary plan throughout the years between 1925 and her death in 1958. The revisions were as a result of her husband's death, the death of designated executors, the creation of the Foulds' laboratory fund in honor of her husband, etc. There is no contention that she lacked testamentary capacity and the validity of the execution of the instruments involved is unquestioned. There are no facts which show any intention on Mrs. Foulds' part to reinstate her 1932 will or of dying intestate. What she obviously intended to do in 1949 was to add her local advisor as coexecutor under her existing will so that he could handle her local affairs at Glens Falls while the corporate executor would act in New York City. This appears in her instructions to Blake W. Francis, her proposed local executor, that the trust company was to remain as coexecutor and that her will was in her safe-deposit box at Glens Falls. The only will in the box was her 1938 will.

All of Mrs. Foulds' testamentary instruments from 1925 to 1949 have been specific in clearly setting forth the manner in which her estate is to be disposed. Whenever a dispositive change or innovation was made it was done so by specific language and not impliedly by operation of intricate legal

presumptions. The dispositive part of her 1938 will, differing in substance from her 1932 will only in the establishment of a fund to the memorial named in honor of her late husband, would be affected in substance only by the revocation of this bequest. When it is realized that the 1938 will was substantially a consolidation of her prior testamentary scheme it is fantastic to accept that she intended, in 1949, to undo this consolidation, revert to the unruly and outmoded wording of the 1932 will (containing, e.g., bequests to her husband who died in 1933), and revoke the legacy to the memorial honoring her husband, which memorial was named in her husband's honor at the insistence of Mrs. Foulds herself. In fact the memorial was the constant recipient of generous donations by Mrs. Foulds as exemplified by her direction to the Glens Falls Bank in 1954 to make an annual contribution from her account to the memorial.

The simple and obvious explanation of the error by the draftsman is that the draftsman had access only to the November 30, 1934 codicil which in turn referred to the 1932 will and the October 5, 1934 and April 4, 1934 codicils, he being unaware of their revocation.

Therefore, we believe the Surrogate was correct in denying appellants' application to reopen probate. The order appealed from should be affirmed.

BERGAN, P. J., COON, GIBSON and HERLIHY, JJ., concur.

Order affirmed, with costs to each party filing a brief, payable from the estate, and the matter of allowances on this appeal remitted to the Surrogate for determination.