663 P.2d 371

Maria SPENCER and Edward Gutierrez, Respondents-Appellants,

v.

Ralph GUTIERREZ, in his capacity as Personal Representative of the Estates of Jesus B. Gutierrez and Aurora Gutierrez, deceased, and individually, Petitioner-Appellee.

No. 5867.

Court of Appeals of New Mexico.

March 15, 1983.

Certiorari Denied May 17, 1983.

Albert H. Engel, Las Cruces, for respondent-appellant, Maria Spencer.

Lanny D. Messersmith, Albuquerque, for respondent-appellant, Edward Gutierrez.

Ray O. Sage, Las Cruces, for petitioner-appellee, Ralph Gutierrez.

## OPINION

WALTERS, Chief Judge.

This appeal challenges the trial court's construction of the wills of the parties' parents. We affirm.

Jesus B. Gutierrez (J.B.) and his wife, Aurora Gutierrez, each executed their own wills in July, 1962. J.B. Gutierrez died on January 27, 1970 and Aurora died on September 16, 1978. Their three children, who are parties in this appeal, are appellants Maria (Emma) Spencer and Edward Gutierrez, and their brother, appellee Ralph Gutierrez.

J.B. and Aurora named each other as administrators of their wills; Ralph was named by each as their alternate administrator. J.B.'s will was not probated at the time of his death and Ralph filed petitions for formal probate of both wills on March 20, 1979. Maria thereafter filed a notice demand, and requested supervised administration of Aurora's estate and an order of complete settlement of J.B.'s estate. Ralph then petitioned to have both wills construed. The probate proceedings were consolidated and a hearing on the motions to construe was held on May 18, 1981.

The contest between the children focused on the following language, found in clause II(a) of J.B.'s will and in clause III(a)(3) of Aurora's will, respectively:

To my son, Ralph Gutierrez, I leave, devise and bequeath * * * the property or real estate which has been occupied and on which has been conducted the business known as City Drug Store and City Center Restaurant, with street address of 334 and 334½ South Main Street, City of Las Cruces * * *. (Clause II(a) of J.B.'s will.)

To our son, Ralph Gutierrez, and in the case he should predecease me, then to his issue, share and share alike:

Property with street address of 334 and 334½ South Main Street, Las Cruces, New Mexico, which has been occupied and on which has been conducted the business known as City Drug Store and City Center Restaurant. (Clause III(a)(3) of Aurora's will.)

J.B. and Aurora owned, in whole or in part, three tracts of land on South Main Street. The court found that J.B. and Aurora intended to bequeath their interests in all three tracts to Ralph. Appellants contend that only one tract should pass to Ralph, while the other two tracts lapsing to the residuary clause which provides for all three heirs sharing in the property in equal portion, because only Tract 1 bears the address of 334 South Main Street, and there is no such address as 334½ South Main.

Appellants have briefed the following issues:

(1) Whether substantial evidence supports the trial court's finding that all three tracts of the South Main property were intended to pass to Ralph.

(2) Whether the language employed in the wills devises only one tract of the South Main property to Ralph.

(3) Whether testimony concerning the decedents' intended disposition of their

property was improperly admitted over objection.

The South Main Street property consists of three adjoining tracts of land, referred to by the parties as Tracts 1, 2, and 3 in the order in which they were acquired. J.B. Gutierrez purchased Tract 1 in 1944. Appellants concede that this tract was clearly intended by the testators to pass only to Ralph, as the street address of Tract 1 and of the drug store and restaurant is 334 South Main Street.

Tract 2 was acquired in December, 1958 in the names of J.B. and Aurora, jointly, Ralph and his wife, jointly, and Edward and his wife, jointly, all as tenants in common.

Tract 3 was acquired under contract of sale and purchase, executed April 25, 1962, by J.B., Aurora, Ralph, and Ralph's wife. Thus, all of the adjoining tracts were acquired prior to the execution of the wills.

J.B., Ralph and Edward had formed a partnership under the name of Valley Drug Store in June 1954. In May, 1961, Edward withdrew from the partnership, at a time when the partners had expanded the business to include a restaurant adjoining the drug store operation. In December, 1962, Edward and his wife conveyed their one-third interest in Tract 2 to J.B. and Aurora.

■ Appellants claim that as there was no material conflict in the evidence, there was no ambiguity in the will, and that as a matter of law the trial court should have so concluded, citing *Walters v. Hastings,* 84 N.M. 101, 500 P.2d 186 (1972). We do not agree that the will was unambiguous or that the evidence was not in conflict. A reference to a non-existent or incorrect address certainly puts at issue what the testator intended by *"and 334½."* (Emphasis added.)

■ Extrinsic evidence is always admissible to determine what property the testator meant to dispose of by the language he used in his will. *In re Estate of Shadden,* 93 N.M. 274, 599 P.2d 1071 (Ct. App.1979). Whenever a will must be construed, the testator's intent is to be determined from (a) all of the language in the

will, (b) the testator's scheme of distribution, (c) the circumstances surrounding the testator at the time of making the will, and (d) the existing facts. *Gregg v. Gardner,* 73 N.M. 347, 388 P.2d 68 (1963).

It is clear from the transcript of proceedings attached to and incorporated "as an explanation of the Court's reasoning in this matter," in the trial court's findings and order decreeing that the testators intended Ralph to take Tracts 1, 2 and 3 as "the sole owner of said real estate and the businesses conducted thereon," that the trial court considered the factors enumerated in *Gregg, supra.*

J.B.'s will left all of his interest in the property described by the ambiguous clause to Ralph, in Paragraph II(a) of his will. In Paragraph III(a)–1–, he left whatever interest he had in that same property, and the business conducted thereon, if Aurora predeceased him, to Ralph. Those two clauses, read together, show J.B.'s recognition of the community nature of the property and his ability, under former law, to devise one-half of the community property at his death, and his inheritance of all of Aurora's community interest if she predeceased him. *See* §§ 29–1–8, 29–1–9, N.M.S.A.1953.

Aurora's will set out, in Paragraph I(b), her awareness that all community property would pass to her surviving husband on her death. Nevertheless, in Paragraph II(a) she made specific bequests of separately-owned real estate to Edward and Maria, with a life estate in those properties to J.B. during his lifetime, but nothing to Ralph. In Paragraph III(a)–3–, however, she conveyed the "334 and 334½ South Main Street" property to Ralph if J.B. did not survive her, and made the same provisions in III(a)–1– and III(a)–2– for Edward and Maria that she had made in the previous Paragraph II(a).

The lawyer who drew the wills intended that included within the specific bequests would be all real estate interests of the testators, leaving no real estate to go into the residuary clause in which the children were to share equally. He sought "to carry

out their indication to me," that all real estate be "disposed of to specific children." The lawyer's understanding of the testators' wishes resulted also from his awareness of the business association of J.B. and Ralph and the business conducted on the South Main Street property by them, as well as the joint acquisition of some of the property by J.B. and Ralph and their wives. The lawyer's statements of memory or belief relating to terms of a decedent's will are expressly admissible under N.M.R.Evid. 803(3), N.M.S.A.1978.

The portion of the decree explaining the court's decision discloses the court's refusal to believe that Aurora intended to disinherit Ralph under Paragraph II(a) of her will but, rather, that she thought a bequest to him unnecessary in that paragraph because it was "taken care of" under J.B.'s will, *i.e.,* upon J.B.'s death, Ralph would inherit all of the business and the property. Her community and joint interests automatically would go to her husband upon her death; if she survived J.B., she provided that Ralph would inherit the South Main Street property.

The court also considered the distribution scheme of the parents. Edward was bequeathed 10 contiguous lots of real estate in a subdivision, and Emma was left 5 contiguous lots in another block of that subdivision and the family home. That scheme led the court to conclude that the parents intended Ralph to have the three adjoining tracts rather than to create "a disastrous-type ownership, ninths and sixths with a building that encompasses a whole tract," the whole tract meaning "Tract[s] 1, 2 and 3."

In will contests as well as in other matters, we must review the evidence most favorably in support of the trial court's judgment. *Moore v. Bean,* 82 N.M. 189, 477 P.2d 823 (1970); *see Matter of Ferrill,* 97 N.M. 383, 640 P.2d 489 (Ct.App.1981).

Here, there is sufficient evidence and there are reasonable inferences which may be drawn from the relationships existing at the time of the execution of the wills, from the testimony of the lawyer who drew the wills, and from the testators' scheme of distribution to support the trial court's findings. *Gregg v. Gardner, supra.*

The judgment awarding Tracts 1, 2 and 3 to Ralph is affirmed.

IT IS SO ORDERED.

WOOD and BIVINS, JJ., concur.