**In the Matter of the ESTATE OF Willard Jennings CROFT.**

**Denis CROFT, Appellant (Contestant),**

v.

**Gordon W. TAYLOR, Sr., Personal Representative and Executor of the Estate of Willard Jennings Croft, Deceased, Appellee (Petitioner),**

**Elizabeth J. Hall and Debra L. Young, (Contestees).**

**No. 85–146.**

Supreme Court of Wyoming.

Feb. 12, 1986.

Clay R. Jenkins and Bruce P. Badley of Badley & Rasmussen, P.C., Sheridan, for appellant.

I. Vincent Case, Jr., Douglas, for appellee.

Frank R. Chapman, Casper, for contestee Elizabeth J. Hall.

Before THOMAS, C.J., ROONEY*, BROWN, CARDINE and URBIGKIT, JJ.

ROONEY, Justice.

Appellee executor (hereinafter referred to as "Estate") presented for probate the last will and testament of Willard Jennings Croft, deceased (hereinafter referred to as "Croft"), together with the first and second codicils thereto. Appellant, Croft's only child, contested the validity of the second codicil. The will was dated October 26,

* Retired November 30, 1985.

1981. It consisted of nine articles, and it designated appellant as executor and as residuary beneficiary. The first codicil was dated March 29, 1982, and only changed the executor from appellant to a friend, Gordon W. Taylor, Sr. The second codicil was dated September 16, 1983. It recited in part:

"I amend my Last Will and Testament of April 16, 1982, by adding thereto Article No. X, which reads as follows: * * * "

It then devised a cabin and land (by legal description) in Teton County "to my friend, Elizabeth 'Betsy' Jane Hall."

Appellant contends the second codicil was void inasmuch as it referred to a will dated April 16, 1982, which will was not presented for probate.[1] Its existence was not indicated other than by the reference to it in the codicil. Both parties moved for a summary judgment, and appellant appeals from the denial of his motion and the granting of the motion of the Estate.

We affirm.

By its very designation as a "will," a last will and testament is an expression that its existence is to express and accomplish the intent of the testator—to do that which he "wills" to be done with his estate. In *Dainton v. Watson*, Wyo., 658 P.2d 79, 81 (1983), we said:

" * * * [I]n considering a will, it is the long-accepted position of this court that intent of the testator must govern. [Citations.] In determining the testator's intent, we can only determine that intent from what the will says; we are not free to write terms in the will that do not, in reality, appear there. [Citations.] We will not supply words for a testator *where the will is clear and unambiguous.* [Citations.]*" (Emphasis added.)

"The sole purpose of the court in construing a will is to ascertain the actual intention of the testator as the same appears from a full and complete consideration of the entire will when read in the light of the surrounding circumstanc-

1. Section 2–6–119, W.S.1977, makes it the duty of a custodian of a will to deliver it to the clerk of court upon death of the testator.

es. * * *" 4 Bowe-Parker: Page on Wills, § 30.6 (1961).

Section 2–6–105, W.S.1977 (July 1980 Replacement), provides in part that

"[t]he intention of a testator as expressed in his will controls the legal effect of his dispositions. * * *"

Section 2–6–112, W.S.1977 (July 1980 Replacement), provides in part that "all wills to be valid shall be in writing." Section 2–1–102(a), W.S.1977 (July 1980 Replacement), provides in part that

"[t]his code [2] shall be liberally construed and applied, to promote the following purposes and policies to:

*    *    *    *    *    *

"(ii) Discover and make effective the intent of a decedent in distribution of his property; * * *"

and Section 2–1–301(a), W.S.1977 (July 1980 Replacement), provides in part:

"When used in this code, unless otherwise required by by the context, the following words and phrases shall be construed as follows:

*    *    *    *    *    *

"(xxxiv) 'Will' includes a codicil * * ."

In this case, we must ascertain Croft's intent as expressed in the second codicil. The obvious primary intent expressed therein is to direct the setting over of specifically described real property to a friend, Elizabeth "Betsy" Jane Hall. This intent is plainly and unambiguously set forth. A will of Croft dated October 26, 1981, had been submitted for probate. It contained nine articles. The second codicil. directed the addition of "Article No. X" to the testator's last will and testament. There was a first codicil to the October 26, 1981, will. The codicil with which we are here concerned was designated a second codicil. If the words "of April 16, 1982" were not in the second codicil, there could be no question about the fact that the second codicil was to the October 26, 1981, will, and the

probate would proceed accordingly with full deference to the testator's intent.

But the words "of April 16, 1982" were in the second codicil. A will of April 16, 1982, was not produced. The probate court could properly conclude that the codicil was not clear and not unambiguous with reference to that which it amended. Its meaning was obscure in this respect, there being present the potential for one of two meanings. The intent of the testator could not be given effect from that said in the second codicil. An instrument is ambiguous "'which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.'" *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463, 465 (1980), quoting from *Bulis v. Wells*, Wyo., 565 P.2d 487, 490 (1977). To fulfill its obligation to liberally construe and apply the Wyoming Probate Code so as to promote the purpose and policy thereof through discovering and making effective the intent of Croft (§ 2–1–102(a)(ii)), the probate court properly received extrinsic evidence relative to such intent. *Taggart v. United States*, 306 F.Supp. 430 (D.C. Wyo.1969), aff'd 430 F.2d 1388 (10th Cir. 1970); *Spencer v. Gutierrez*, 99 N.M. 712, 663 P.2d 371, cert. denied 99 N.M. 644, 662 P.2d 645 (1983); *White v. Conference Claimants Endowment Commission of the Idaho Annual Conference of the Methodist Church*, 81 Idaho 17, 336 P.2d 674 (1959).

Affidavits were received in connection with the motion for summary judgment for this purpose. Mark R. Stewart, attorney at law, Glenrock, prepared the will, the first codicil, and the second codicil. In his affidavit, he said that he had not prepared a will for Croft dated April 16, 1982, and that the April 16, 1982, date in the codicil "is the result of inadvertance [sic] and is in error." He explained that he maintains a form file in his office, and

2. Section 2–1–101, W.S.1977 (July 1980 Replacement), provides: "This act may be cited as the

'Wyoming Probate Code'."

"[a]fter learning of the error in Mr. Croft's Second Codicil to his Last Will and Testament, I examined the form file for Codicils to Last Will and Testaments, and discovered the form in that file bearing the date of April 16, 1982. * * * "

The affidavit of Christine E. Webb reflects that, as Mr. Stewart's secretary, she typed and witnessed Croft's last will and testament dated October 26, 1981, and both codicils to it; that she did not type or witness a will for Mr. Croft dated April 16, 1982; that she understood the September 16, 1983, codicil was "to apply as and be a Codicil to Mr. Croft's October 26, 1981 Will," and that

"* * * in the course of typing the Second Codicil to the Last Will and Testament of Mr. Croft, I merely copied the date off the office form, and did not insert the date of October 26, 1981, which was the Will to which this Codicil related."

Mr. Stewart's affidavit points out that the October 26, 1981, will had nine articles, and that the codicil reflected the amendment to add "Article No. X."

■ Appellant contends that these affidavits were hearsay and conclusionary and, therefore, not proper for consideration in connection with a motion for summary judgment. The recitations in the affidavits, however, were concerning that which Mr. Stewart and Ms. Webb had personal knowledge. They knew which instruments were prepared by them for, and executed by, Croft; that there was a form file in the office containing a codicil form with the date April 16, 1982, as the date of the will being amended; and that a will dated April 16, 1982, was not prepared by Mr. Stewart. Ms. Webb had personal knowledge that she typed April 16, 1982, on the codicil instead of the correct date of October 26, 1981. Such are not statements made by someone else which are now being repeated to prove the truth of such statements.[3]

■ The extrinsic evidence was substantial that the date "April 16, 1982," in the second codicil was a mistake and that the codicil was a second codicil to the will dated October 26, 1981. The probate court could properly find that the April 16, 1982, date was a mistake on the part of the draftsman of the will and not that of Croft; and under the facts and circumstances of this case, the October 26, 1981, will, the first codicil dated March 29, 1982, and the second codicil dated September 16, 1983, were properly admitted to probate.

We add, however, that we can reach this conclusion because the evidence is exceptionally strong that the mistake *was* that of the draftsman and because the mistake would make a distribution other than in accordance with the expressed distributive intention of Croft as determined from the codicil itself. Each case of this nature must stand or fall on its own facts and circumstances.

The following are examples reflecting that our construction is not without precedent.

The use by the draftsman of a will of the conjunctive "and" instead of the disjunctive "or" changed the disposition of a part of the testator's estate in *In re Estate of Nager,* 45 Misc.2d 1050, 258 N.Y.S.2d 760, 764 (1965). The court there said:

"This court had the occasion to discuss unskilful language * * * concluding that it is the duty of the court to subordinate the language to the testamentary intention quoted and followed [in] the opinion in *Phillips v. Davies,* 92 N.Y. 199, 204, where the court said: 'If such was the real meaning and intention of the testatrix; if an examination of the whole will forces that conviction; if its plain and definite purposes are endangered by inapt or inaccurate modes of expression; and we are sure that we know what the testatrix meant; we have a right and it is our duty to subordinate the language to the intention. In such a case the court

---

**3.** Rule 801(c), W.R.E., defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

may reject words and limitations, supply them or transpose them, to get at the correct meaning.' This rule makes it possible for our court to give effect to the testator's obvious and true intention [citations]."

In *In re Will of Foulds*, 13 A.D.2d 16, 212 N.Y.S.2d 519 (1961), the testatrix executed a will in 1932 and a subsequent one in 1938. In 1949, she executed a codicil which recited that it was " 'a codicil to my Last Will and Testament dated and executed by me on March 3, 1932." (Emphasis in original.) The court noted:

" * * * [T]he execution of a codicil which refers to a prior revoked will by date, though not specifically republishing the will or revoking an intervening will, indicates an implied intent that the prior will be re-established and the intervening will be revoked [citations]. But the doors are not thereby closed to the submission of extrinsic evidence to show that the deceased never in fact intended such a result [citation]." 212 N.Y.S.2d at 524.

The court then examined extrinsic evidence and held that the 1938 will was properly admitted to probate, stating that the reference in the codicil to the 1932 will was an error by the draftsman. For a similar holding under similar facts, see *Continental Illinois Nat. Bank & Trust Co. of Chicago v. Art Institute of Chicago*, 409 Ill. 481, 100 N.E.2d 625 (1951).

In *In re Estate of Wochos*, 23 Cal.App.3d 47, 99 Cal.Rptr. 782 (1972), a fourth codicil was described as a second codicil. Evidence was received that the draftsman was unaware of the existence of a second and third codicil, and the codicil prepared under this mistake was probated as a fourth codicil.

In *Hoffman v. Irizarry*, Tex.App., 673 S.W.2d 674 (1984), a codicil on its face purported to pertain to a revoked will. Extrinsic evidence was received, and that professed meaning was held to be a result of a typographical error.

In *Paris v. Erisman*, Mo., 300 S.W. 487, 491 (1927), it was held that the lay scrivener of a codicil had not expressed the true intent of the testator "through ignorance or mistake" by including, in a revocation of a legacy, a description of real property which concerned the entire real property devised to testator's wife rather than a description of only a small part thereof which had been sold subsequent to the date of the will.

Affirmed.