2005 WY 74

**In the Matter of the ESTATE OF Sarah W. STANTON, Deceased.**

**Darlene Baker, Appellant (Respondent),**

v.

**Julie Enis, Personal Representative of the Estate of Sarah W. Stanton, Appellee (Petitioner).**

**No. 04–179.**

Supreme Court of Wyoming.

July 11, 2005.

Representing Appellant: Thomas C. Bancroft, of Bancroft Law Firm, P.C., Worland, Wyoming.

Representing Appellee: William R. Shelledy, Jr., of Scott, Shelledy & Luhm, P.C., Worland, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] This case involves interpretation of the Last Will and Testament of Sarah W. Stanton. The district court determined that the will was unambiguous and ordered distribution of the assets in dispute through the residual clause of the will. Appellant, Darlene Baker, challenges that decision. We reverse.

## ISSUES

[¶ 2] Ms. Baker states the following issues:

1. Did the decedent intend to leave, to her sister, the decedent's capital stock located in a safety deposit box she owned jointly with her sister?

2. Is Article III of the Last Will and Testament of Sarah Stanton ambiguous?

Julie Enis, the personal representative of the estate, identifies one issue:

1. Whether the District Court correctly interpreted sentence 1 of Article III, of the Last Will and Testament of Sarah W. Stanton wherein it determined that said paragraph excepted the stock held in Sarah Stanton's name individually and placed said stock in the residuary estate for distribution?

## FACTS

[¶ 3] Sarah Stanton signed her Last Will and Testament on May 24, 2001, in Thermopolis, Wyoming. Ms. Stanton died on October 11, 2003. The will was admitted to probate and Julie Enis was appointed as personal representative.

[¶ 4] At the time of her death, Ms. Stanton held a safety deposit box at First State Bank jointly with her sister, Ms. Baker. The safety deposit box contained, among other items, stock certificates in the sole name of Ms. Stanton. The stock was valued at $253,252.16.

[¶ 5] Article III of Ms. Stanton's will states:

To my sister, Darline [sic] Baker, I give her the contents of my Safety Deposit Box No. 287 located at the First State Bank, said box held in our joint names and that she is entitled to all property therein with the exception of any joint tenancy property or property such as stocks, bonds, certificates of deposit that are issued in some other name or names besides hers and/or mine jointly. These items, if any, will descend to those persons names [sic] either as joint tenant with me or as named legal owner of the property located therein. All other property located in said safety deposit box will become the sole and absolute property of Darline [sic] Baker together with all the contents of my home, including but not limited to jewelry, antiques, furniture and furnishings, dishes, heirlooms, keepsakes, appliances, etc., provided she survives me by sixty (60) days.

[¶ 6] The will also contained a residuary clause. Pursuant to that clause (Article V), Ms. Stanton directed that any remaining or residual property in her estate be divided into five equal shares and distributed to the beneficiaries identified in the residuary clause. Ms. Enis and her husband were named as beneficiaries of one of those shares.

[¶ 7] Ms. Enis, as personal representative of the estate, petitioned the district court for authorization to sell the stock and distribute the proceeds to the beneficiaries named in the residuary clause. Ms. Baker objected to the petition on the basis that she was the rightful beneficiary of the stock pursuant to Article III of the will. Ms. Enis responded with a motion seeking the district court's interpretation of Article III. Ms. Baker countered with a request for resolution of the dispute pursuant to the Wyoming Uniform Declaratory Judgments Act.[1]

[¶ 8] A hearing was held on July 2, 2004. No evidence was presented. After hearing

---

1. Wyo. Stat. Ann. § 1-37-101 et seq. (LexisNex-   is 2003).

argument, the district court announced its decision stating:

> ... Article 3, of Sarah W. Stanton's Will is unambiguous.
>
> ...
>
> The Court therefore determines that the intent here was to except out the stock held in Sarah Stanton's name.
>
> Therefore, the Court concludes that the stocks, bonds, certificates of deposit enumerated in the aforementioned motion does pass under the Will under Article 5, the residual clause.

An order to that effect was entered. Ms. Baker appeals from that decision.

### STANDARD OF REVIEW

[¶ 9] The district court determined that the Last Will and Testament of Sarah W. Stanton was unambiguous and expressed her intention that stock in her name be distributed pursuant to the residuary clause of the will. Whether language is ambiguous is a question of law which we review *de novo*. *Samuel v. Zwerin*, 868 P.2d 265, 266 (Wyo.1994). The proper interpretation of an unambiguous will is also a question of law which we review *de novo*. *In re Estate of Armijo*, 128 N.M. 565, 995 P.2d 487, 489 (App.1999); *Woods v. Wells Fargo Bank Wyoming*, 2004 WY 61, ¶ 42, 90 P.3d 724, ¶ 42 (Wyo.2004). Because we conduct a *de novo* review, we afford no deference to the legal conclusions of the district court. *In re Estate of Corpening*, 2001 WY 18, ¶ 7, 19 P.3d 514, ¶ 7 (Wyo.2001); *Hovendick v. Ruby*, 10 P.3d 1119, 1122 (Wyo.2000).

### DISCUSSION

[¶ 10] Ms. Stanton's intent, as expressed in the will, controls the legal effect of her disposition. Wyo. Stat. Ann. § 2–6–105 (LexisNexis 2003). We articulated our standards for the construction of wills in *In re Estate of Seader* where we stated:

> We note that Wyo. Stat. Ann. § 2–1–102(a)(ii) (LexisNexis 2003) also emphasizes the importance of testamentary intent:

> (a) This code shall be liberally construed and applied, to promote the following purposes and policies to:
>
> ...
>
> (ii) Discover and make effective the intent of a decedent in distribution of his property[.]
>
> ...
>
> Consistent with the above statutory directives, "the intention of the testator must govern." *Hammer v. Atchison*, 536 P.2d 151, 155 (Wyo.1975). Furthermore, the intent of the testator must be ascertained solely from the meaning of the words used in the will. *Churchfield v. First Nat. Bank of Sheridan*, 418 P.2d 1001, 1003 (Wyo. 1966); *In re Boyd's Estate*, 366 P.2d 336, 337 (Wyo.1961). Where the will is clear and unambiguous, the court may not read into a will something the testator did not place there. *Dainton v. Watson*, 658 P.2d 79, 81 (Wyo.1983); *Kortz v. American Nat. Bank of Cheyenne*, 571 P.2d 985, 987 (Wyo. 1977). The courts will not supply words for the testator. *In re Lendecke's Estate*, 79 Wyo. 27, 329 P.2d 819, 822 (1958). Wyo. Stat. Ann. § 2–6–112 (LexisNexis 2003), which requires wills to be in writing, precludes ascribing to a testator any intention not expressed in the instrument itself. *Churchfield*, 418 P.2d at 1003; *In re Boyd's Estate*, 366 P.2d at 337.

*In re Estate of Seader*, 2003 WY 119, ¶¶ 31–32, 76 P.3d 1236, ¶¶ 31–32 (Wyo.2003).

[¶ 11] Although both parties assert that the will is unambiguous and clearly reflects Ms. Stanton's intent, they offer competing interpretations of the will relating to distribution of the stock held solely in the name of Ms. Stanton. If a will is unambiguous the intent of the testatrix is to be determined solely from the language of the will. *In re Estate of Croft*, 713 P.2d 782, 783 (Wyo.1986). If a will is ambiguous, extrinsic evidence may be utilized to properly interpret the will. *Id.* at 784. A will is ambiguous if it is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present. *Id.* Disagreement between the parties as to the will's meaning does not create an ambiguity. *See, e.g., Wol-*

*ter v. Equitable Resources Energy Co.*, 979 P.2d 948, 951 (Wyo.1999).

[¶ 12] We must determine if Ms. Stanton's intent regarding distribution of the disputed assets is unambiguously expressed in her will. The parties agree that the three sentences of Article III should serve as the primary focus of our inquiry. In the first sentence, Ms. Stanton expressed her intention to bequeath the entire contents of the safety deposit box to Ms. Baker, except for two types of property described in that sentence. The second sentence of Article III provides direction regarding distribution of the excepted property. In the third sentence, Ms. Stanton reiterated her intention that the contents of the safety deposit box be distributed to Ms. Baker.

[¶ 13] The dispute centers around the excepted property referenced in the first sentence. Specifically, we must determine Ms. Stanton's intent regarding the phrase "hers and/or mine jointly." The parties offer differing interpretations of this phrase. We agree that this phrase, read in isolation, is subject to more than one meaning. The parties concede that in order to determine Ms. Stanton's intent, we must construe the provisions of the will *in pari materia.* However, they focus on different words, phrases and provisions of the will to ascertain Ms. Stanton's intent.

[¶ 14] Ms. Baker contends that the plain meaning of the first sentence is that Ms. Baker is to receive all stock in the name of Ms. Baker (her name), stock in the name of Ms. Stanton (my name), and/or stock in the name of Ms. Baker and Ms. Stanton jointly. According to Ms. Baker, this interpretation is buttressed by the second sentence of Article III where Ms. Stanton describes and provides instruction regarding the property which would not pass to Ms. Baker. The second sentence states, "[t]hese items, if any, will descend to those persons names [sic] either as joint tenant with me or as named legal owner of the property located therein." "These items" refers to property excepted from the bequest made to Ms. Baker by the preceding sentence.

[¶ 15] Ms. Enis asserts that the language of Article III can be reduced to the following:

> To my sister [Darlene Baker] . . . I give her the contents of my safety deposit box . . . and that she is entitled to all the property therein with the exception of . . . stocks . . . that are issued in some other name or names besides hers and/or mine jointly.

Ms. Enis views the exception as very specific and detailed. She contends that unless the stock in the safety deposit box was held jointly by Ms. Baker either with Ms. Stanton or with a third party, it would not become Ms. Baker's property. Ms. Enis asserts that if Ms. Stanton wanted Ms. Baker to have all of the stock located within the safety deposit box, Ms. Stanton could have simply stated so.

[¶ 16] We agree with the position advanced by Ms. Baker. The task of this Court is to ascertain testamentary intent and give it effect. We must determine the intent of the testatrix by taking into account the entire will giving effect to every word, if that can be done, without defeating the general purpose of the will. *In re Estate of Bell,* 764 P.2d 689, 692 (Wyo.1988); *In re Estate of Ogburn,* 406 P.2d 655, 658 (Wyo.1965). *See also, Percival v. Percival,* 526 P.2d 342, 344 (Wyo.1974) (explaining that various parts of the will are to be construed *in pari materia*). The meaning of Article III of Ms. Stanton's will is not to be ascertained by "random words and phrases . . . construed in isolation." *Lockwood v. Killian,* 179 Conn. 62, 425 A.2d 909, 913 (1979). Rather, intent must be derived from the will as a whole. *Crowell v. Chapman,* 257 Mass. 492, 154 N.E. 397, 399 (1926); *In re Estate of Bell,* 764 P.2d at 692; *In re Estate of Ogburn,* 406 P.2d at 658.

[¶ 17] Admittedly, interpreting the phrase "hers and/or mine jointly" in isolation subjects the clause to double meaning and creates ambiguity. Possible interpretations of the phrase would include those previously mentioned by the parties. Additionally, we recognize stock in the name of "Darlene Baker and/or Sarah Stanton jointly" as a possible interpretation. There may be other interpretations of the phrase if read without reference to other provisions of the will. However, we must construe the provisions of the

will *in pari materia.* When we apply such an analysis, we conclude that the will unambiguously reflects Ms. Stanton's intent that the stock held solely in the name of Ms. Stanton, located in the safety deposit box, be distributed to Ms. Baker.

[¶ 18] The second section of Article III illuminates Ms. Stanton's intent. It unambiguously reflects her understanding of the "excepted" items. It states: "[t]hese items, if any, will descend to those persons names [sic] either as joint tenant with me or as named legal owner of the property located therein." The parties agree that the term "these items" unambiguously refers to the exceptions, i.e., the stock that does not pass to Ms. Baker. "These items" includes joint tenancy property which identifies Ms. Stanton as one of the joint tenants. "These items" also includes property which would "descend" to the "named legal owner of the property." At the time of her death, Ms. Stanton was the "named legal owner" of the stock at issue. She could not have intended that stock in her name "descend" to herself.

[¶ 19] Ms. Enis contends that the term "named legal owner of the property" refers to the residuary legatees identified in Article V. We disagree. Ms. Enis provides no plausible explanation or legal authority which would allow an interpretation that equates "named legal owner" with residuary legatee. The term "named legal owner" refers to the named legal owner on the stock certificate.

[¶ 20] When the first two sentences of Article III are read together, Ms. Stanton's intent is clear: Ms. Stanton intended to give Ms. Baker all of the contents of the safety deposit box except: (1) joint tenancy property; and (2) securities in the name of someone other than Ms. Stanton or Ms. Baker, or the two of them jointly. Any other interpretation would go beyond the plain and ordinary meaning of the words of Article III and ignore the language of the second sentence of Article III.

[¶ 21] In her final contention, Ms. Enis claims the residuary clause and the trust clause support her interpretation that Ms. Stanton intended the stocks to pass under the residuary clause.[2] Ms. Enis asserts that if the securities pass to Ms. Baker, no property is available to fund the residuary clause or the trust. Even if this contention is accurate, it is not relevant to our determination. "The fact that the residuary legatees may receive little or nothing has no bearing on the proper construction of the will." *NationsBank of South Carolina v. Greenwood,* 321 S.C. 386, 468 S.E.2d 658, 663 (App.1996). It is worth remembering that "[t]he basic purpose of a residuary clause ... is to prevent partial intestacy." *Swearingen v. Giles,* 565 S.W.2d 574, 576 (Tex.App.1978). *See also, Renn v. Williams,* 233 N.C. 490, 64 S.E.2d 437, 438 (1951). "A general residuary clause will cover everything which is not otherwise well disposed of in other parts of the will...." *Hawks v. Creswell,* 60 Wyo. 1, 16, 144 P.2d 129, 133 (1943). Here, the second sentence of Article III qualifies the exception created by the first sentence and limits it to "these items, *if any.*" (emphasis added). The use of the phrase "if any" undermines Ms. Enis' contention that Ms. Stanton intended to fund the residuary clause with the disputed assets. "If any" suggests Ms. Stanton's uncertainty regarding the existence of such property.

[¶ 22] Additionally, we note that Article III required Ms. Baker to survive Ms. Stanton by sixty (60) days in order to take under the will. If Ms. Baker did not survive Ms. Stanton, the will provided for Ms. Baker's share to pass through the residuary clause.

2. Article V of the will states:
Any remaining or residual property of whatever kind and lapsed devise or gift, regardless of the form of the property, after all debts are paid, and following the distribution as I have set out above, I shall give, devise and bequeath to my sister, Darline [sic] Baker, one share, my niece, Renee (Warren) Abelsen, one share, my friend and "adopted granddaughter", Sherry Tervo, one share, Jim Enis and Julie Enis, husband and wife, together as one share and

Mike Enis and Kim Enis, husband and wife, together as one share, all together in five equal shares, share and share alike, or to the survivors. If either of the husband or wife above should predecease me, the surviving spouse shall take their joint share.
Article VIII establishes a trust which would pay Ms. Tervo, a minor, her residuary share at the rate of $1,000 per month. Ms. Stanton also made a specific bequest to Ms. Tervo in Article II of the will.

A residuary clause is designed for precisely this purpose. There simply is no indication that Ms. Stanton's intent was to fund the residuary clause (and subsequently the trust) with the stocks contained in the safety deposit box absent Ms. Baker's failure to survive Ms. Stanton by the requisite sixty (60) days or some other failure of a devise in the will.

## CONCLUSION

[¶ 23] In construing the will as a whole, giving effect to each word, clause and provision, we find that the Last Will and Testament of Sarah W. Stanton is unambiguous. The stock at issue should be distributed to Ms. Baker. The decision of the district court is reversed and remanded for entry of an order in accordance with this opinion.